**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

ESTATE OF UZI NISSAN,

Plaintiff,

v.

NISSAN.COM, an Internet domain name, NISSAN.NET, an Internet domain name, and JOHN DOE,

Defendants.

Civil Action No. ______________________

## VERIFIED COMPLAINT

Plaintiff the Estate of Uzi Nissan ("Plaintiff"), by counsel, alleges as follows for its Verified Complaint against Defendants:

## NATURE OF THE SUIT

1. Uzi Nissan was a visionary entrepreneur who was always thinking of new ideas for businesses and for ways to help his community and those around him. Mr. Nissan was a gracious and generous man, always helping people in any possible way and going above and beyond to make others happy and comfortable.

2. Mr. Nissan acquired the NISSAN.COM and NISSAN.NET domain names for use in relation to his retail computer business in 1994 and 1996, and famously used, promoted, and defended the domains from the time of acquisition through the time of his death.

3. Plaintiff, Mr. Nissan's estate, is his successor in interest and the rightful owner of the NISSAN.COM and NISSAN.NET domain names.

4. At some point following Mr. Nissan's death, a thief (Defendant John Doe) gained unauthorized access to Mr. Nissan's domain name management account and stole the domain

© 2023 Wiley Rein LLP.

names. Plaintiff now asserts *in rem* claims under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), alternatively under 28 U.S.C. § 1655, and Virginia common law, and *in personam* claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, 2707, and Virginia common law, arising from the unauthorized access to Mr. Nissan's secured computer accounts and the unauthorized transfer and theft of the NISSAN.COM and NISSAN.NET domain names (the "Defendant Domain Names").

5. Plaintiff seeks injunctive and other equitable relief as a result of the actions of a person or persons of unknown identity who gained unauthorized access to the domain name management account at GKG.NET, INC. ("GKG.NET") on a protected computer, transferred control of the Defendant Domain Names from Plaintiff's account, and thereby disabled Plaintiff's control of the Defendant Domain Names causing irreparable injury to Plaintiff.

**PARTIES**

6. Plaintiff the Estate of Uzi Nissan was, and is, the rightful owner of the Defendant Domain Names after having first registered the Defendant Domain Names in 1994 and 1996.

7. Defendant NISSAN.COM is an Internet domain name that has been improperly transferred to another registrant account at GKG.NET. A copy of the current domain name registration record for NISSAN.COM is attached as Exhibit A, and an archived domain name registration record identifying Plaintiff as the registrant of NISSAN.COM prior to the theft is attached as Exhibit B.

8. Defendant NISSAN.NET is an Internet domain name that has been improperly transferred to another registrant account with the domain name registrar GKG.NET. A copy of the current domain name registration record for NISSAN.NET is attached as Exhibit C, and an



© 2023 Wiley Rein LLP.

archived domain name registration record identifying Plaintiff as the registrant of NISSAN.NET prior to the theft is attached as Exhibit D.

9. Defendant John Doe is a person or persons of unknown identity who gained unauthorized access to Plaintiff's protected domain name management account and/or personal email account and, without consent or authority, transferred control of Defendant Domain Names away from Plaintiff.

**JURISDICTION, VENUE AND JOINDER**

10. This action arises under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), 28 U.S.C. § 1655, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, 2707, and related claims under the common law of Virginia.

11. This Court has original jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), 28 U.S.C. § 1367, 28 U.S.C. § 1655, and the doctrines of ancillary and pendent jurisdiction.

12. This Court has *in rem* jurisdiction pursuant to 15 U.S.C. § 1125(d)(2)(A) and 28 U.S.C. § 1655.

13. *In rem* jurisdiction is appropriate under 15 U.S.C. § 1125(d)(2)(A) because the current registration records for the Defendant Domain Names do not identify the parties in possession of the Defendant Domain Names and, alternatively, Plaintiff, despite his due diligence, has been unable to find a person who would have been a defendant in a civil action under 15 U.S.C. § 1125(d)(1)(A). Plaintiff has provided notice to the Defendants of his intent to proceed *in rem* pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa).

14. The Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(3) and (4),



© 2023 Wiley Rein LLP.

states that the *in rem* action, jurisdiction, and remedies created by the statute are "in addition to any other civil action or remedy otherwise applicable" and "in addition to any other jurisdiction that otherwise exists, whether in rem or in personam."

15. *In rem* jurisdiction is also appropriate under 28 U.S.C. § 1655 because the Defendant Domain Names are property situated in this district and Plaintiff is asserting a claim of ownership to the Defendant Domain Names and seeking removal of the cloud on the title of the domain names.

16. Plaintiff's claims against John Doe for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, 2707, and for conversion, are based on John Doe's unauthorized access to and alteration of computer records maintained on protected computers for the domain name registrar and/or the .COM and .NET domain name registries located within the district so as to effectuate the theft of the Defendant Domain Names.

17. John Doe directed the acts complained of herein toward the district and utilized instrumentalities in the district in that John Doe gained unauthorized access to Plaintiff's domain name management account and associated computer records and thereafter, without authorization, caused the domain name registration records maintained by the domain name registrar and/or domain name registries to be altered so as to transfer control of Defendant Domain Names away from Plaintiff.

18. Venue is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C), 28 U.S.C. § 1391(b)(2), and 28 U.S.C. § 1655 in that the Defendant Domain Names are property situated in this district and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district.



© 2023 Wiley Rein LLP.

19. Joinder of the Defendant Domain Names and Defendant John Doe is proper under Fed. R. Civ. P. 20(a)(2) and/or 21 in that the claims set forth herein arise out of the same series of transactions and the same questions of law are common to all of the Defendants.

## PLAINTIFF'S RIGHTS

20. Uzi Nissan was an internationally known entrepreneur, computer salesman, and a tireless consumer advocate for over 20 years.

21. Mr. Nissan immigrated to the United States in the 1970s and started his first business shortly after arriving in America. In 1980, Mr. Nissan created Nissan International, a wholesale computer and heavy equipment export company.

22. In 1991, Mr. Nissan created Nissan Computer Corporation ("NCC") as its sole shareholder to sell retail computer goods and services in Raleigh, North Carolina and licensed NCC the use of his name.

23. Mr. Nissan was also an early Internet pioneer. In 1994 and 1996, pursuant to its license from Mr. Nissan, NCC registered the NISSAN.COM and NISSAN.NET domain names as "Nissan Computer Corp. (Licensee)" and "Uzi Nissan (Licensor)" to advertise his computer business.

24. After registration, the sites were configured to prominently display the Nissan name in connection with Mr. Nissan's computer business.



© 2023 Wiley Rein LLP.

Nissan.com




Nissan.net




25. In August 1999, the NISSAN.COM and NISSAN.NET domain names became the subject of a highly publicized legal battle with Nissan Motor Company which lasted approximately eight years and ultimately vindicated Mr. Nissan's ownership and usage rights in the NISSAN.COM and NISSAN.NET domain names.

26. In 2006, and as a result of the lawsuit, Mr. Nissan also began using the site to promote public advocacy related to Internet free speech issues, in addition to continuing to operate



© 2023 Wiley Rein LLP.

his computer business and sell advertisements on the sites.

Nissan.com




Nissan.net




27. The NISSAN.COM and NISSAN.NET sites prominently used Mr. Nissan's name on the banner for the websites. The sites also displayed the NCC logo consisting of the word "Nissan" on a horizontal axis, and the word "Computer" on a vertical axis, at the left and right top corners of the website.



© 2023 Wiley Rein LLP.

28. As the reach of the Internet continued to grow, the number of visitors during this time period was substantial. For example, in 2007, web traffic metrics showed that approximentaly 500,000 unique visitors visited the NISSAN.COM and NISSAN.NET websites on a monthly basis.

29. Throughout the 2010s until the domain names were stolen, Mr. Nissan and his estate continued to use the NISSAN.COM and NISSAN.NET[1] domains to sell computer products, promote the Nissan names prominently on the site, sell advertisements, and raise awareness about important internet free speech issues.

Nissan.com




30. Mr. Nissan also expended significant amounts of money to market and maintain ownership of the NISSAN.COM and NISSAN.NET domains. For example, Mr. Nissan invested at least $3 million into legal fees to maintain ownership of the sites. Mr. Nissan also owned and operated several other domains used to promote the NISSAN.COM and NISSAN.NET domains

[1] In 2010, the NISSAN.NET domain was configured to redirect all traffic to NISSAN.COM.



© 2023 Wiley Rein LLP.

and raise awareness about Mr. Nissan's public advocacy efforts, including ncchelp.org[2] and digest.com.[3]

ncchelp.org

https://www.ncchelp.org/FAQ/faq.htm Go APR OCT NOV
100 captures 30
17 Aug 2000 - 30 Oct 2020 2019 2020 2021

FAQ

Home | The Story | How Can | People's | News | Contact | FAQ

**General Notes and FAQ** (Frequently Asked Questions)

- Nissan Computer Corp. registered the domain name nissan.com in May 1994. When the web was mostly computer, technology, universities, and research related entities, but not many non-computer technology companies around.
- Nissan Computer Corp. registered the domain name nissan.net in March 1996. When the suffix .net was reserved for network providers/ISPs only, just as the suffix .org was reserved for nonprofit organizations only.
- Nissan Computer Corp. has never been in the business of selling cars and/or car accessories.

digest.com




31. In connection with the NISSAN.COM and NISSAN.NET domains, Mr. Nissan has been the subject of extensive media coverage, in publications like the *Los Angeles Times*, *Salon*,

[2] Following Mr. Nissan's death, the registration for ncchelp.org was not renewed and was later registered by an unknown individual in January of 2023 and configured to redirect to a site selling computers.

[3] Similar to the NISSAN.COM and NISSAN.NET domains, digest.com was stolen from Plaintiff, but is not the subject of the present action.



© 2023 Wiley Rein LLP.

*Wired*, *USA Today, Associated Press*, *CNET*, and *Jalopnik* and interviews on news networks like *CNBC*.

32. Consumers continually looked toward Mr. Nissan for his computer services and his consumer advocacy efforts as demonstrated by the 500 pages of comments from individuals voicing their support for Mr. Nissan that appeared on the NISSAN.COM and NISSAN.NET domain names until disabled by Defendant John Doe.

33. Mr. Nissan, and after his death Plaintiff, used the NISSAN.COM and NISSAN.NET domain names for almost 30 years in connection with the NISSAN.COM and NISSAN.NET websites to advertise computer services, promote his public advocacy efforts related to Internet free speech issues, and for business and personal email communications using @NISSAN.COM and @NISSAN.NET addresses to communicate with customers of NCC, supporters of Mr. Nissan's public advocacy, family, friends, to open and use various online accounts, and/or to promote and provide ancillary services (the "NISSAN.COM and NISSAN.NET Marks").

34. Following Mr. Nissan's death, Plaintiff is now the lawful owner of the Defendant Domain Names and all the associated rights as shown by the historical WhoIs records for the Defendant Domain Names and widely publicized information. None of the domain name registrations had expired at the time of the theft.

35. Plaintiff is entitled to common law trademark protection in the NISSAN.COM and NISSAN.NET Marks by virtue of use of the marks in U.S. commerce for almost 50 years.

36. John Doe's unauthorized transfer and subsequent misuse of the Defendant Domain Names further demonstrates that the NISSAN.COM and NISSAN.NET Marks are entitled to trademark protection.



© 2023 Wiley Rein LLP.

37. Despite the Defendant Domain Names being stolen, the domains now direct consumers to an image of the prior NISSAN.COM and NISSAN.NET websites in a possible attempt to avoid the appearance of impropriety.

**UNLAWFUL TRANSFER AND REGISTRATION OF THE DOMAIN NAMES**

38. The Verizon 2020 Data Breach Investigations Report reported that there were over 108,069 security breaches in 2019—with 100,000+ of the breaches involving the unauthorized use of an individual's login credentials to obtain unlawful access to a secured account.

39. Plaintiff's claims in the present case involve one of the most recent iterations of such computer hacking actions—colloquially referred to as "domain name theft."

40. Plaintiff and Mr. Nissan have maintained a domain name management account with GKG.NET since first acquiring the Defendant Domain Names almost 30 years ago.

41. Upon Mr. Nissan's death, GKG.NET was advised of Mr. Nissan's death and the creation of Plaintiff.

42. Plaintiff's domain name management account with GKG.NET is maintained on a protected computer and access to the account should be restricted to only those persons that possess Plaintiff's username and password.

43. Upon review of Plaintiff's domain name management account with GKG.NET, Plaintiff learned that the Defendant Domain Names had been transferred to other accounts at GKG.NET.

44. Plaintiff never received notifications that the Defendant Domain Names were being transferred. Such domain name transfer notification emails are required by ICANN.

45. On information and belief, John Doe obtained unauthorized access to Plaintiff's domain registrar account and manipulated the computer records to obtain the transfer of the



© 2023 Wiley Rein LLP.

Defendant Domain Names through an "account transfer" within GKG.NET or other surreptitious manner intended to avoid detection by Plaintiff.

46. On information and belief, John Doe prevented Plaintiff from receiving electronic communications seeking approval for the transfer of the Defendant Domain Names and obtained unauthorized access to such electronic communications so as to approve the transfer(s).

47. When the Defendant Domain Names were transferred by John Doe without authorization, the technical settings for the domain name were changed thereby disabling Plaintiff's ability to control the domain names and associated email accounts.

48. Plaintiff contacted GKG.NET upon learning of the theft of the Defendant Domain Names and informed them of the hack and unauthorized transfers of the Defendant Domain Names.

49. GKG.NET did not deny, dispute, or question that Plaintiff's account was hacked or that the Defendant Domain Names were transferred without authorization, but GKG.NET has been unwilling to secure the return of the domain names.

50. Plaintiff has been made aware of communications from a person claiming to be in possession of the Defendant Domain Names who impersonated family members of Mr. Nissan and sought to sell the domain names.

51. The registration and use of the Defendant Domain Names by John Doe are without authorization from Plaintiff.

52. The Defendant Domain Names do not reflect the trademark or intellectual property rights of John Doe.

53. On information and belief, the Defendant Domain Names do not reflect the legal name of John Doe.



© 2023 Wiley Rein LLP.

54. John Doe has not engaged in bona fide noncommercial or fair use of Plaintiff's NISSAN.COM and NISSAN.NET Marks in a website accessible under the Defendant Domain Names.

55. John Doe provided material and misleading false contact information in the domain name registrations in that the current registration records still list Plaintiff's registration information.

56. John Doe transferred the Defendant Domain Names without authorization from Plaintiff and thereby acquired a domain name which John Doe knew was identical to, and reflective of, Plaintiff's NISSAN.COM and NISSAN.NET Marks.

57. As stolen domain names, no subsequent registrant may acquire title to the Defendant Domain Names that is superior to Plaintiff's title to the domain names.

**FIRST CLAIM FOR RELIEF (IN REM)**
***Violation of the Anticybersquatting Consumer Protection Act***

58. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

59. Plaintiff's NISSAN.COM and NISSAN.NET Marks are distinctive and were distinctive prior to the time the Defendant Domain Names were transferred away from Plaintiff without authorization and thereby unlawfully registered to John Doe.

60. The aforesaid acts by John Doe constitute registration, trafficking, and/or use of a domain name that is identical to Plaintiff's NISSAN.COM and NISSAN.NET Marks, with bad faith intent to profit therefrom.

61. The aforesaid acts constitute unlawful cyberpiracy in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

62. The aforesaid acts have caused, and are causing, great and irreparable harm to



© 2023 Wiley Rein LLP.

Plaintiff and the public. Unless permanently restrained and enjoined by this Court, said irreparable harm will continue. Thus, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i) and 28 U.S.C. § 1655, Plaintiff is entitled to an order changing the registrar and registrant for Defendant NISSAN.COM and NISSAN.NET returning control of the domains back to Plaintiff.

**SECOND CLAIM FOR RELIEF (IN REM)**
***Quiet Title***

63. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

64. Plaintiff has valid legal and equitable title to the Defendant Domain Names by virtue of registration and ownership of the domain names for almost 30 years.

65. The Defendant Domain Names were stolen from Plaintiff and no subsequent registrant may acquire valid title to the domain names—whether or not any such registrant purports to be a bona fide purchaser.

66. Through control of the domain names, John Doe has asserted a claim to the Defendant Domain Names that impedes Plaintiff's ownership and control of the domain names and constitutes a cloud on Plaintiff's title to the domain names.

67. Plaintiff is entitled to a declaration from the Court, including without limitation pursuant to 28 U.S.C. § 1655, that it is the lawful owner and registrant of the Defendant Domain Names and that there are no other valid claims against the title to the Defendant Domain Names.

**THIRD CLAIM FOR RELIEF (IN PERSONAM)**
***Violation of the Computer Fraud & Abuse Act***

68. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

69. John Doe: (a) knowingly and intentionally accessed Plaintiff's domain name



© 2023 Wiley Rein LLP.

management account on a protected computer without authorization and thereby obtained information from the protected computer in a transaction involving an interstate or foreign communication (18 U.S.C. § 1030(a)(2)(C)); (b) knowingly and with an intent to defraud accessed Plaintiff's domain name management account on a protected computer without authorization and obtained information from the computer, which John Doe used to further a fraud and obtain something of value (18 U.S.C. § 1030(a)(4)); and (c) intentionally accessed Plaintiff's domain name management account on a protected computer without authorization, and as a result of such conduct caused damage and loss (18 U.S.C. § 1030(a)(5)(C)).

70. John Doe's unlawful actions have included causing the protected domain name registration records maintained in the district by VeriSign to be altered so as to transfer control of Defendant Domain Names away from Plaintiff.

71. Plaintiff has suffered damages as a result of the conduct complained of herein and the loss of the Defendant Domain Names.

**FOURTH CLAIM FOR RELIEF (IN PERSONAM)**
***Violation of the Electronic Communications Privacy Act***

72. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

73. On information and belief, John Doe intentionally accessed without authorization electronic communications sent by the domain name registrar to Plaintiff seeking Plaintiff's approval for the transfer of the Defendant Domain Names.

74. On information and belief, John Doe obtained such electronic communications and/or prevented Plaintiff's authorized access to such electronic communications while the communications were in electronic storage.



© 2023 Wiley Rein LLP.

75. John Doe engaged in such actions with a knowing and/or intentional state of mind, and such actions constitute a violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, 2707.

76. Plaintiff has suffered damages including the loss of the Defendant Domain Names as a result of the conduct complained of herein and is entitled to injunctive relief, actual, statutory, and/or punitive damages, and attorney's fees under the Electronic Communications Privacy Act.

**FIFTH CLAIM FOR RELIEF (IN PERSONAM)**
***Conversion***

77. Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

78. Plaintiff is the owner of property rights in and to the Defendant Domain Names.

79. John Doe has wrongfully taken control of the Defendant Domain Names.

80. John Doe's wrongful exercise of dominion and control over the Defendant Domain Names deprives Plaintiff of use and control of the Defendant Domain Names in violation of Plaintiff's rights in and to the domain names.

81. To the extent that John Doe has subsequently transferred the Defendant Domain Names to a person or persons other than John Doe, such other person's wrongful exercise of dominion and control over the Defendant Domain Names deprives Plaintiff of use and control of the Defendant Domain Names in violation of Plaintiff's rights in and to the domain names.

82. Plaintiff has suffered damages including the loss of the Defendant Domain Names as a result of the conduct complained of herein and is entitled to injunctive relief, actual, statutory, and/or punitive damages, and/or attorney's fees.



© 2023 Wiley Rein LLP.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests of this Court:

1. That judgment be entered in favor of Plaintiff on his *in rem* claims under the Anticybersquatting Consumer Protection Act, 28 U.S.C. § 1655, and for quiet title against the res Defendants NISSAN.COM and NISSAN.NET.

2. That judgment be entered in favor of Plaintiff on his *in personam* claims under the Computer Fraud and Abuse Act, the Electronic Communications Privacy Act, and for Conversion against Defendant John Doe.

3. That the Court order the Defendant Domain Names be returned to Plaintiff through VeriSign's change of the current domain name registrar to Plaintiff's registrar of choice, GoDaddy.com, LLC, and by GoDaddy's change of the registrants to Plaintiff.

4. That the Court order an award of actual, statutory, and/or punitive damages, costs and reasonable attorneys' fees; and

5. That the Court order an award to Plaintiff of such other and further relief as the Court may deem just and proper.

Dated:
June 26, 2023

By: */s/ Attison L. Barnes, III*

Attison L. Barnes, III (VA Bar No. 30458)
David E. Weslow (for *pro hac vice*)
Spencer Brooks (for *pro hac vice*)
WILEY REIN LLP
2050 M St. NW
Washington, DC 20036
(202) 719-7000 (phone)
abarnes@wiley.law

*Counsel for Plaintiff*
*Estate of Uzi Nissan*



● 2023 Wiley Rein LLP.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ESTATE OF UZI NISSAN,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN.COM, an Internet domain name, NISSAN.NET, an Internet domain name, and JOHN DOE,<br><br>Defendants. | Civil Action No. ______________ |

**VERIFICATION**

I, Samra Nissan, Administrator of the Estate of Uzi Nissan, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the facts contained in the foregoing Verified Complaint are true and correct.

Samra Nissan
Samra Nissan, Administrator of the Estate of Uzi Nissan

June 22 2023
Date