IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ESTATE OF UZI NISSAN,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　　Civil Action No. 1:23-cv-821 PTG/IDD
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
NISSAN.COM, *et al.*,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　)
_____　)

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Estate of Uzi Nissan's ("Plaintiff") Motion for Default Judgment against Defendants NISSAN.COM and NISSAN.NET (collectively, "Domain Names," "Defendants," or "Marks"). Dkt. No. 19. After the Defendants failed to file an answer, plead, or otherwise defend this action, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, the supporting memorandum, and relevant portions of the underlying record, the undersigned Magistrate Judge makes the following findings and recommends that Plaintiff's Motion be **GRANTED.**

## I. INTRODUCTION

On June 26, 2023, Plaintiff filed its complaint for *in rem* relief against Defendants and the current registrant of the domain names, John Doe. Dkt. No. 1. On October 17, 2023, Plaintiff filed its First Amended Complaint, which solely brought claims against the Defendant Domain Names. Dkt. No. 10. Plaintiff brings a claim for violation of the Federal Anti-Cybersquatting Consumer

Protection Act ("ACPA"), 15 U.S.C. § 1125(d) against the Domain Names. *Id.* As relief, Plaintiff

seeks an order directing VeriSign, Inc., to change the registrar of record for the Domain Names to

GoDaddy.com, LLC, who will change the registrant of the Domain Names to Plaintiff. *Id.* at 12-

13; Pl.'s Mot. for Default J.

### A. Jurisdiction and Venue

For a court to render a default judgment against a party, it must have (1) subject matter

jurisdiction, (2) personal or *in rem* jurisdiction, and (3) be the appropriate venue for the action.

This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331,

because this case involves a federal question arising under the ACPA (15 U.S.C. § 1121(a)).

This court has *in rem* jurisdiction over the Domain Names, pursuant to 15 U.S.C. §

1125(d)(2)(A), which permits the owner of a mark to file an *in rem* action against a domain name

in the judicial district in which the domain name registrar is located, if two elements are met. The

domain name registry, Verisign, Inc., is located within this judicial district. Am. Compl. ¶ 14. The

first element required for an *in rem* action over a domain name is that the domain name(s) must

violate a plaintiff's trademark rights. *See* 15 U.S.C. § 1125(d)(2)(A)(i). Plaintiff's Complaint

alleges that Plaintiff is the rightful owner of the Marks, and that Defendants use of the Domain

Names infringes on its Marks. Am. Compl. ¶¶ 19-33, 36-51. Therefore the first element is satisfied.

As to the second element required for *in rem* jurisdiction over the Defendant Domain

Names, the court must find that the trademark owner: (1) is unable to obtain *in personam*

jurisdiction over a person liable for the infringement, or (2) through due diligence is unable to find

a person liable for the infringement. *See* 15 U.S.C. § 1125(d)(2)(A)(ii). Due diligence requires that

the plaintiff: (aa) send a notice of the alleged violation and intent to sue to the registrant of the

domain name at the postal and e-mail address provided by the registrant and (bb) publish a notice of the action as the court may direct. *Id*.

Here, the undersigned finds that Plaintiff has sufficiently alleged that she is unable to obtain personal jurisdiction over the registrant of the Defendant Domain Names because the registrant, John Doe, has not provided any identifying information. Dkt. No. 12 at 2. Plaintiff, who previously controlled the Domain Names, alleges that John Doe transferred the Domain Names without Plaintiff's knowledge or authorization. Am. Compl. ¶¶ 36-42. The WhoIs records for the Defendant Domain Names do not provide any contact information for John Doe, but rather still list Plaintiff's registration information. Dkt. No. 12 at 2. On July 3, 2023, Plaintiff filed a Motion for Leave to Take Discovery Prior to the Rule 26(F) Conference, which the Court granted. Dkt. Nos. 4, 9. Plaintiff served subpoenas on the registrar and host for Defendant Domain Names, GKG.net, Inc. and InMotion Hosting, Inc., which did not yield any identifying information. Dkt. No. 12 at 3. Therefore, the undersigned finds that Plaintiff has sufficiently demonstrated that it is unable to obtain *in personam* jurisdiction over Defendant Domain Names.

Further, Plaintiff has complied with 15 U.S.C. § 1125(d)(2)(A)(ii), subsections (aa) and (bb). In that regard, on June 27 and October 17, 2023, Plaintiff sent notice of its intent to proceed *in rem* against the Defendant Domain Names, through the registrar's online portal, which was the only means of contact Plaintiff was able to identify. Dkt. No. 12-1 at 2. The online portal did not allow for attachments, so Plaintiff notified the current registrant of its intent to proceed *in rem* and directed the registrant to contact Plaintiff's counsel, using the provided contact information, in order to provide John Doe with a copy of the First Amended Complaint. *Id.*  Plaintiff filed its Motion for Order to Publish Notice of Action on October 17, 2023. Dkt. No. 11. The Court granted the motion on October 18, 2023, and ordered Plaintiff to publish a copy of the Order in *The*

*Washington Times* or *The Washington Post*, once, within fourteen (14) days of the Order. Dkt. No. 15. On October 23, 2023, Plaintiff published a copy of the Order in *The Washington Times*. Dkt. No. 16. Accordingly, the undersigned finds that Plaintiff satisfied its due diligence requirements pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii).

Venue also is proper in this district under 15 U.S.C. § 1125(d)(2)(C). For an *in rem* action, the domain name "shall be deemed to have its situs" in the judicial district where the "registrar, registry, or other domain name authority" is located. 15 U.S.C. § 1125(d)(2)(C). Here, the principal place of business of the domain name registry, Verisign, Inc., is located in this district. Am. Compl. ¶ 14.

### B.  Service of Process

The Court must be satisfied that the defaulting party has been properly served. Federal Rule of Civil Procedure ("FRCP") 4(n)(1) provides that "the court may assert service over property if authorized by a federal statute" and "notice to claimants of the property is given as provided in the statute or by serving a summons under this rule." In this case, 15 U.S.C. § 1125(d)(2)(B) states that satisfying the due diligence requirements outlined in § 1125(d)(2)(A)(ii) shall constitute service of process. Because the Plaintiff has fulfilled the due diligence requirements outlined above, the undersigned recommends finding that service of process has been proper as to the Defendant Domain Names.

### C.  Grounds for Default Judgment

Plaintiff filed its Complaint on June 26, 2023 against the Defendant Domain Names and their current registrant, John Doe. Dkt. No. 1. On October 17. 2023, Plaintiff filed an Amended Complaint, which only brought claims against Defendant Domain Names. Dkt. No. 10. Also on October 17, 2023, Plaintiff filed its Motion for Order to Publish Notice of Action. Dkt. No. 11.

The Court granted the motion, and on October 23, 2023, Plaintiff published a copy of the Order in *The Washington Times*. Dkt. Nos. 15, 16.

Plaintiff filed a Request for Clerk's Entry of Default on November 14, 2023, and the Clerk of the Court entered default on November 15, 2023. Dkt. Nos. 17-18. On November 17, 2023, Plaintiff filed its Motion for Default Judgment and accompanying memorandum in support of its motion. Dkt. Nos. 19-20. On December 8, 2023, a hearing on the Motion for Default Judgment was held before the undersigned. Dkt. No. 22. After Defendant failed to respond to the complaint or the Motion for Default Judgement, and failed to appear at the hearing, or otherwise defend this matter, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. *Id.*

## II. EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." A defendant in default concedes the factual allegations of the complaint. *See, e.g.*, *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Instead, the Court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id*.

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must

evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the FRCP to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### III. <u>FACTUAL FINDINGS AND ANALYSIS</u>

### Count One: Violation of the ACPA

To establish an ACPA violation, a plaintiff is required to show that (1) the plaintiff owns the protected mark, (2) the registrant(s) had a bad faith intent to profit from using the domain names, and (3) the domain names are identical or confusingly similar to, or dilutive of, the distinctive marks owned by plaintiff. *See* 15 U.S.C. § 1125(d)(1)(A); s*ee also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). For the reasons set forth below, the undersigned finds that Plaintiff has established a violation of the ACPA.

### *1. Plaintiff Possesses a Valid and Protectable Mark.*

A necessary predicate to an ACPA action is that a plaintiff has a protectable interest in a trademark. *See Wagner v. lindawagner.com*, 202 F.Supp. 3d 574, 580-81 (E.D. Va. 2016). A party may assert a protectable interest in an unregistered trademark if the mark is (1) used in commerce, and (2) sufficiently distinctive. *Int'l Bancorp, LLC v. Societe des Bains de Mer du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363 (4th Cir. 2003). The Fourth Circuit has held that commerce under such context is "coterminous with that commerce that Congress may regulate

under the Commerce Clause of the United States Constitution." *Int'l Bancorp, LLC*, 329 F.3d 359 at 364. "[T]he term 'use in commerce' with respect to services[,]" is defined "as being when a mark is 'used or displayed in the sale or advertising of services *and* the services are rendered in commerce." *Id.* at 373 (emphasis added). The degree of protection is "directly related to the mark's distinctiveness." *East West, LLC. V. Rahman,* 896 F. Supp. 2d 488, 499 (E.D. Va. 2012) (quoting *Sara Lee Corp. v. Kayser-Roth Corp.,* 81 F.3d 455, 464 (4th Cir. 1996)). "At common law, trademark ownership is acquired by actual use of the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). The party claiming ownership is required to demonstrate that it was the first to use the mark in the sale of goods or services. *Id*.

The undersigned finds that Plaintiff has a protectable interest in the Marks. Uzi Nissan ("Mr. Nissan") created Nissan International, a computer and heavy equipment export company, in 1980. Am. Compl. ¶ 17. In 1991, Mr. Nissan established the Nissan Computer Corporation ("NCC") to sell retail computer goods and offer computer services. *Id.* ¶ 18. Mr. Nissan operated as the sole shareholder of NCC and licensed NCC to use his name. *Id.* In 1994 and 1996, Nissan registered the NISSAN.COM and NISSAN.NET domain names to promote NCC. *Id.* ¶ 19. In August 1999, the Domain Names became the subject of a legal dispute with Nissan Motor Company, which lasted for approximately eight years, and ultimately resulted in the court affirming Mr. Nissan's ownership and usage rights in the Domain Names. *Id.* ¶ 21; *see Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002 (9th Cir. 2004).

Plaintiff became the lawful owner of the Defendant Domain Names following Mr. Nissan's death. *Id.* ¶ 30. Mr. Nissan, and subsequently, Plaintiff, used the NISSAN.COM and NISSAN.NET domain names for approximately 30 years to advertise computer services and to communicate with

customers and others through @NISSAN.COM and @NISSAN.NET email addresses. *Id.* ¶ 29. In 2007, the Domain Names received approximately 500,000 unique visitors per month. *Id.* ¶ 24. Plaintiff has actively and continuously offered, advertised, and communicated with customers using the NISSAN.COM and NISSAN.NET Marks, and accordingly, the undersigned finds that Plaintiff has sufficiently demonstrated the continuous use of the Marks in commerce.

Plaintiff has also sufficiently demonstrated that the Marks are distinctive because they have acquired a second meaning. There are two ways a plaintiff can demonstrate the distinctiveness of a mark: "1) that plaintiff's mark is inherently distinctive; or 2) even if the plaintiff's mark is not inherently distinctive, the mark has become distinctive by acquiring secondary meaning." *Teaching Co. Ltd. P'ship v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 575 (E.D. Va. 2000). A mark is inherently distinctive, if it is "fanciful," "arbitrary," and "suggestive," and is entitled to greatest protection against infringement; however, if the mark is only "descriptive" or "generic," it is not inherently distinctive and requires a secondary meaning to receive protection. *Id.* (citing *Sara Lee Corp.,* 81 F.3d at 464). The Fourth Circuit has held that a rebuttable presumption of the marks secondary meaning is created when a plaintiff proves that the defendant directly and intentionally copied its mark. *Larsen v. Terk Technologies,* 151 F.3d 140, 148-49 (4th Cir. 1998).

The undersigned finds that the Marks are distinctive because they have acquired a secondary meaning. As described above, Mr. Nissan and Plaintiff have continuously used the Marks to advertise computer goods and services since 1994. Am. Compl.  ¶¶ 29-30. Plaintiff alleges that John Doe gained access to Plaintiff's domain name management accounts at GKG.NET and transferred the Domain Names through an "account transfer" with GKG.NET, all without Plaintiff's knowledge or authorization. *Id.* ¶¶ 38-46. Accordingly, the Domain Names are the same as and remain identical to the Domain Names as previously used by Mr. Nissan and

Plaintiff. *Id.* ¶¶ 7-8, 54. These Marks have no meaning outside of their use as a source identifier for Plaintiff's services. *See id.* ¶¶ 17-33. Accordingly, the undersigned finds that Plaintiff has sufficiently shown that Defendant Domain Names have directly and intentionally copied its mark. Because the Defendants have failed to rebut this presumption, the undersigned finds the NISSAN.COM and NISSAN.NET Marks are distinctive because they have acquired a secondary meaning. For the above-stated reasons, the undersigned finds that Plaintiff has a valid and protectable mark to state a claim under the ACPA.

### 2. Defendants Acted in Bad Faith with Intent to Profit from Using the Defendant Domain Names

To establish an ACPA violation, plaintiff also is required to prove that the registrant(s) had a bad faith intent to profit from using the defendant domain names. 15 U.S.C. § 1125(d)(1)(A); *see People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). In determining whether a defendant acted in bad faith, a court may consider several factors, including, but not limited to:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(i); *see People for Ethical Treatment of Animals*, 263 F.3d at 368–69. Courts need not address all nine factors and only need to discuss the factors relevant to the "unique circumstances of th[e] case." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F.Supp.2d 563, 567 (E.D.Va.2010); *see Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 268 (4th Cir.2001).

The undersigned finds that Plaintiff has established that registrant(s) possessed the requisite bad faith intent to profit from Defendant Domain Names. Under the facts and circumstances of this case, the undersigned finds factors V, VI, and VII—intent to divert consumers, offering to transfer or sell the domain name to third parties for financial gain, and false and misleading contact information, respectively—particularly relevant in determining whether Defendants acted in bad faith.

There is no indication that John Doe has any intellectual property rights in the Domain Names, nor that the Domain Names include John Doe's legal name, pursuant to factors I and II. Am. Compl. ¶¶ 47-48. Further, pursuant to factors III and IV, John Doe has not used the Domain Names in connection with the bona fide offering of goods or services, nor in bona fide noncommercial or fair use of the Marks through the associated websites. *Id.* ¶ 49. Plaintiff demonstrates, pursuant to factor V, that Defendants had the intent to divert customers from Plaintiff's websites such that it would cause harm to the goodwill represented by the Marks because John Doe took control of and transferred the Domain Names without Plaintiff's knowledge or authorization. *Id.* ¶¶ 36-51. This prevented Plaintiff from continuing to access and use the Domain Names in the promotion of NCC's business and, consequently, prevented consumers from accessing Plaintiff's legitimate services through the Domain Names. Am. Compl. ¶¶ 36-51; Pl.'s Mem. at 12.

Factor VI also supports a finding of bad faith. Plaintiff alleges that an individual purporting to be in possession of the Defendant Domain Names has impersonated Mr. Nissan's family members in attempts to sell the Domain Names to third parties. Am. Compl. ¶ 45. The registration records for the Domain Names further support a finding of Defendants' bad faith, pursuant to factor VII, because John Doe has not updated the registration records to reflect his own contact information, but rather, the registration records still list the contact information for Plaintiff. Dkt. No. 12 at 2. Accordingly, Defendants have intentionally failed to maintain accurate contact information for the Domain Names. *See* 15 U.S.C. § 1125(d)(1)(B)(VII). Based on the foregoing factors, the undersigned finds that Plaintiff has sufficiently demonstrated Defendant's bad faith in using the Defendant Domain Names.

### 3. The Domain Names are Confusingly Similar or Identical to the Distinctive Marks

The undersigned finds that Plaintiff has sufficiently demonstrated that the Defendant Domain Names are identical to Plaintiff's Marks. 15 U.S.C. § 1125(d)(a)(A)(ii); *See Also People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001).

Here, John Doe transferred and disabled Plaintiff's access to the Domain Names, and the Domain Names have remained identical to Plaintiff's NISSAN.COM and NISSAN.NET Marks. Am. Compl. ¶¶ 7-8; 36-51. Accordingly, the undersigned finds that the Domain Names are identical to Plaintiff's distinctive Marks.

### F. Relief

In this *in rem* action, Plaintiff seeks an order directing VeriSign to change the registrars of record for the Domain Names to Plaintiff's domain name registrar of choice, GoDaddy.com, LLC, who shall then take all necessary steps to have Plaintiff listed as the registrant for the Defendant Domain Names. Am. Compl. at 12-13; Mot. for Default. J. Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name . . . a court may order . . . the transfer of the domain name to the owner of the mark." This Court has previously ordered the transfer of domain names where those domain names infringe on valid trademarks. *See Int'l Bancorp, LLC.*, 129 F. Supp. 2d at 490. Given that Plaintiff has established a violation of the ACPA, the undersigned recommends granting Plaintiff's requested relief and ordering Verisign to change the registrar of record to GoDaddy.com, LLC. GoDaddy.com, LLC shall then take the necessary steps to change the registrant of the Domain Names to Plaintiff.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned Magistrate Judge recommends entry of default judgment in favor of Plaintiff and against Defendant Domain Names, as to Count I of the First Amended Complaint. The undersigned further recommends that Verisign be ordered to change the registrar of record for the Domain Names to GoDaddy.com, LLC, who shall then take the necessary steps to change the registrant of the Domain Names to Plaintiff.

## V. NOTICE

**By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendants at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.**

/s/ Ivan D. Davis

January 31, 2024
Alexandria, Virginia

Ivan D. Davis
United States Magistrate Judge